PEOPLE v GAMBRELL

Docket No. 79846. Decided November 13, 1987. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of
granting leave, reversed the judgments of the Court of Appeals
and the circuit court, and remanded the case for a new trial.

Robert N. Gambrell was convicted by a jury in the Wayne Circuit
Court, Irwin H. Burdick, J., of felony murder. The Court of
Appeals, BEASLEY, P.J., and J. H. GILLIS and DODGE, JJ., af-
firmed in an unpublished opinion per curiam, holding that the
trial court did not abuse its discretion in refusing to qualify a
certain defense witness as an arson expert (Docket No. 80369).
The defendant applies for leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held:*

The testimony of the defendant's expert was improperly
excluded. The witness is a chemical engineer with an academic
and employment-related background for the proposed expert
testimony. The error was not harmless because it crippled the
defendant's presentation of his defense.

Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, and *Don W. Atkins,* Assistant
Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan M. Mein-
berg*) for the defendant.

PER CURIAM. The issue in this case is whether
the circuit court erred in its decision that an
expert witness called by the defendant was un-
qualified to testify as an expert. We hold that the
trial court did err, and we therefore reverse the
judgments of the circuit court and the Court of
Appeals.

I

In the early morning hours of December 21, 1983, the defendant and his 2½-year-old daughter were in a motel room that was consumed by fire. The defendant's daughter died.

The defendant was charged with alternative counts of first-degree murder: one count alleged premeditated murder, the other alleged felony murder. The felony-murder count alleged that the murder had taken place in the perpetration or attempted perpetration of an arson. MCL 750.316; MSA 28.548.

The defendant was found guilty of felony murder at the conclusion of a June, 1984, jury trial. He was then sentenced to the mandatory term of life in prison.

After the Court of Appeals affirmed the decision of the trial court,[1] the defendant filed in this Court a delayed application for leave to appeal. In lieu of granting the application, we ordered the prosecutor to show cause why the defendant's conviction should not be reversed on several grounds, including that the trial court had erred in refusing to qualify the defendant's expert witness. *People v Gambrell,* 428 Mich 886 (1987). The prosecutor has filed an answer to our show-cause order, and the defendant has replied.

II

At trial the defendant testified that he had been drunk on the evening of the fatal fire. The gist of his testimony was that he did not know how the fire started, but that it had surely been an accident of some sort.

---

[1] *People v Gambrell,* unpublished opinion per curiam of the Court of Appeals, decided November 10, 1986 (Docket No. 80369).

To support his testimony that the fire had not been set intentionally, the defendant called a proposed expert witness. The witness testified that he is both an attorney and a registered professional engineer. He had been a chemical engineer for approximately twenty years prior to the defendant's trial. The witness testified that he had worked as a research engineer for a chemical company, as chief engineer of "a thermal convection corporation," and as a consulting engineer. When asked by defense counsel what experience he had had as an expert in fire cases, the witness provided the following testimony:

*Q.* Have you ever testified, previously in court, as to the origin of fires?

*A.* Yes, I have.

*Q.* How many times?

*A.* I really couldn't count them. I think there's at least twenty cases I've been involved with that were matters invoving [sic] the origin of fires, for one purpose or another.

*Q.* When was the last time?

*A.* Well, I'm currently involved in another arson case or a claim of arson.

*Q.* Prior to that?

*A.* Well, your question was, have I testified? I've been involved, as an attorney, involving cases that involved combustion, ignition and fires. I'm trying to remember if it was in Lansing, Michigan. It was a home that exploded from a gas furnace. There was another one in Trenton, Michigan, which was an apartment house fire that burned down, and I'm trying to remember. Those would be 1975, '76 where I worked as an expert witness.

*Q.* You did testify in court?

*A.* I did, very competently.

*Q.* Have you ever lectured on the cause of a fire, to anyone?

*A.* I was chief engineer for Detroit, Wayne

County Air Pollution Control Agency for a period, as chief engineer in 1969 or '70, in that period. From 1965 to the beginning of 1970, I ran the Downriver Pollution Control Project. I gave a talk about once a month, on the natue [sic] of combustion and industrial processes that use combustion. In addition to that work, I was asked to lecture at the Detroit Police Academy on one or two occasions, about combustion. I've also worked with the Detroit Fire Department in cases that involved gasoline explosions or potential explosions.

*Q.* And you have testified about such matters before?

*A.* By deposition, yes. I can't think—I've not testified in a case that involved a claim of arson before. I have testified either by deposition or in court, many times, having to do with combustion matters.

*Q.* I see. Have you ever consulted with any fire department or fire societies?

*A.* No. Other than that, I worked with the Detroit Fire Department, Mr. Kuntz and osme [sic] of his arson investigators, with regard to litigation that involved Shell Oil Company and gasoline leaking into a building.

*Q.* You say you've been an attorney involved in several arson cases?

*A.* I've been involved not in arson, in the criminal sense. I've been an attorney in civil claims that have been where there was a dispute as to the origin of the fire; one party claiming arson and the other people saying it was an accidental fire. Those were civil matters. They were not criminal matters.

*Q.* And you've been an attorney for one side or the other?

*A.* That's correct. I don't have a list. Approximately a hundred cases, both as Plaintiff and Defendant; some governmental and some industrial.

The assistant prosecutor argued that the witness was not qualified as an expert. ("He may be a qualified lawyer, but not qualified to state any opinions on the origins of fires.") After excusing the jury, the trial court said that it was "waiting to hear something that is going to relate to his expertise to arson, and I haven't heard anything yet." The trial court asked the witness whether he had "done any arson investigation at all." The witness responded:

> *The Witness:* Yes, I have dealt with the low point of burns, with flashpoints, of materials both open and closed, coupled with the different ignition temperatures of different materials, the melting points of metals, the evidence left after fires, the tracks left by the formation of combustion products, the phenomenon of paralysis. I can go on at great length.

The trial court then asked the witness whether he had previously been qualified as an expert:

> *The Court:* You can go on at great length, but tell me what case you testified with respect to arson?
>
> *The Witness:* I don't think I can testify in any case, with respect to arson. The question I would be called on to be answered is what is the nature of the origin; of this case, how was it ignited? What does the affter [sic] effect of the fire tell someone about its origin? If the Court is asking me to state that I would testify before a jury that so and so or so and so is guilty or not guilty of a criminal act, I could never do that.
>
> *The Court:* You're not called upon to do that. But where is your expertise? The fact that you try arson cases, whether it be civil or criminal, doesn't make you an expert on arson.
>
> *The Witness:* I'm trying to tell the Court that arson is simply the claim that someone, criminally and culpably, has caused the ignition of the fire.

Before you get to that, I think the court and trier of fact has to know what evidence—what the evidence means, what you find out after the fire, what is there and what does it mean? In all the cases that I've been involved with, some of them would be an insurance company that says that the people burned down their home, intentionally, and we're not going to pay the fire insurance.

*The Court:* In those cases, did you testify as an expert and qualified as an expert in what court? When?

*The Witness:* First off, I was qualified as an expert, in Trenton. An apartment house fire I told you about, and that case was settled. We came right up to trial.

*The Court:* So? So you didn't testify? Name one case in which you testified as an expert in arson, in which any court qualified you to testify in an arson case.

*The Witness:* I've never needed to testify in open court, in a so-called arson case. The testimony and expertise I've had deal with all the same things, except with the idea of criminal guilt, which is not my business, anyway. I've studied Paul Kirk's book. I've taught from the book. In fact, I assisted the fire department arson investigators in problems with the Shell Oil Company. Those cases were litigated. It just happened I testified.

*Mr. Dorf:* Didn't you give depositions?

*The Witness:* Some, I did. The explosion in Lansing, which destroyed one home and damaged 33 others and caused a death and three injuries, I testified as an expert.

*The Court:* Where did you testify?

*The Witness:* In Lansing, and Ingham County, by deposition. It was read, de bene esse.

There was further discussion. Defense counsel explained the difficulties that he had had in investigating the case, including the fact that the burned motel room had been restored to its original condition before he was able to have an arson

investigator check the scene. The trial court eventually concluded that the witness' testimony would be excluded. The trial court invited the witness to assist trial counsel in locating a different expert.

III

In *People v Smith,* 425 Mich 98, 105-106; 387 NW2d 814 (1986), we explained the principles that govern a trial court's discretionary decision whether to admit expert testimony. In the course of that discussion, we said that "the witness must have sufficient qualifications 'as to make it appear that his opinion or inference will probably aid the trier in the search for truth.' McCormick, Evidence (3d ed), § 13, p 33." We also quoted MRE 702, which provides that expert testimony can be provided by "a witness qualified as an expert by knowledge, skill, experience, training, or education . . . ."

As the Court of Appeals correctly observed, it is well settled that the determination of a witness' expert qualifications is within the discretion of the trial court and will not be overturned on appeal unless it can be shown that the court abused its discretion. *People v Hawthorne,* 293 Mich 15, 23; 291 NW 205 (1940). In this case, the Court of Appeals has held, without detailed explanation, that the trial court did not abuse its discretion.

We disagree. The proposed expert is a chemical engineer who testified that he had lectured in both the public sector and the private sector on combustion, and had worked with the Detroit Fire Department in cases involving gasoline explosions or potential explosions. He had worked with arson investigators and had "dealt with the low point of burns, with flashpoints, of materials both open and closed, coupled with the different ignition tempera-

tures of different materials, the melting points of metals, the evidence left after fires, the tracks left by the formation of combustion products, the phenomenon of paralysis." The witness is clearly qualified to testify as an expert on the defendant's behalf. As in *Hawthorne*,[2] a finding of expertise is not foreclosed by the fact that the witness has developed his expertise in a career that has followed a path different than the careers of the prosecution's arson experts. Gaps or weaknesses in the witness' expertise are a fit subject for cross-examination, and go to the weight of his testimony, not its admissibility.

When the parties began discussing this matter out of the presence of the jury, the trial court opened the conversation by saying:

> All right, now in the absence of the jury we can talk more freely about an attorney who handles medical malpractice cases. Can he testify in medical malpractice cases? Can he testify in medical malpractice cases as an expert?

This case does not involve an attorney who has simply become a self-made expert through the sort of study that is frequently required in order to try medical malpractice cases or other cases involving technical or scientific knowledge. We therefore need not decide today whether it is possible for an attorney to be qualified as an expert in a technical field solely as a result of involvement in such cases as an attorney. The witness is a chemical engineer with an academic and employment-related background for the expert testimony he proposed to give. As we have indicated, challenges to the precise origins of his expertise are matters that go to the weight of his testimony, not its admissibility.

[2] In *Hawthorne,* this Court held that lack of a medical degree did not bar a witness from qualifying as an expert on insanity.

IV

The defendant's conviction must be reversed because of the improper exclusion of the witness' expert testimony. This error is not harmless, because in this case the exclusion of the expert witness crippled the defendant's presentation of his defense that the fire was not set purposefully. In light of this disposition, we find it unnecessary to examine the other issues raised by the defendant in this appeal.

In lieu of granting leave to appeal, we reverse the judgments of the Court of Appeals and the Wayne Circuit Court, and we remand this case to the Wayne Circuit Court for a new trial. MCR 7.302(F)(1).

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, BOYLE, ARCHER, and GRIFFIN, JJ., concurred.