# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIE LEE WIMBERLY,

        Defendant-Appellant.

UNPUBLISHED
April 26, 2016

No. 322923, 325763
Washtenaw Circuit Court
LC No. 13-000219-FC

Before: SAWYER, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this consolidated appeal, defendant appeals from two separate jury convictions, both of which arose out of defendant's involvement in the shooting death of Brandon Charles to keep Charles from testifying against defendant in another criminal proceeding. The other criminal proceeding, in Wayne County, also involved shooting Charles: defendant was the driver of a vehicle involved in a road rage incident that culminated in one of defendant's passengers nonfatally shooting Charles and his fiancée, Seylon Dudley. Defendant attempted to bribe Charles to keep him from testifying at a preliminary examination, and, when that attempt failed, defendant engineered Charles's death, although defendant was not the individual who personally carried out the killing. Defendant was convicted in the Wayne County case of two counts of assault with intent to commit murder on an aiding and abetting theory. That matter was the subject of a prior appeal to this Court.[1]

In the instant appeal, defendant was charged with numerous offenses arising out of Charles's death. The proceedings were complicated by the discovery that the testimony of Sophie Peak, upon which defendant was first bound over, was perjured; defendant was subsequently bound over again based on the testimony of Avantis Parker. At defendant's first trial,[2] Terrance Parker, the alleged shooter and Avantis's half-brother, was a co-defendant before

---

[1] *People v Wimberly*, unpublished opinion per curiam of the Court of Appeals, Docket No. 321490 (issued October 20, 2015). Defendant has filed an application for leave to appeal to our Supreme Court.

[2] The subject of Docket No. 322923.

a separate jury, which acquitted him. Defendant's jury convicted him of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and carrying a concealed weapon (CCW), MCL 750.227, but deadlocked on the remaining charges. Defendant was retried,[3] with another co-conspirator, Lawrence Matthews,[4] and the second jury convicted him of first-degree murder, MCL 750.316, conspiracy to commit murder, MCL 750.157a, witness intimidation, MCL 750.122(8), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.

After the first trial, the trial court sentenced defendant as an habitual offender, second offense, MCL 769.10, to concurrent terms of 40 months to 7½ years in prison for each conviction. After the second trial, the trial court sentenced defendant as an habitual offender, second offense, to mandatory life without parole for first-degree murder, life for conspiracy to commit murder, 125 months to 22½ years for witness intimidation, and mandatory 2 years for felony-firearm. Defendant maintained that he was innocent and had not received a fair trial. On appeal, he raises numerous issues in both appeals, both through counsel and in a Standard 4 brief.[5] In both appeals, we affirm defendant's convictions. In Docket No. 325763, we also affirm defendant's sentences. In Docket No. 322923, we remand for further proceedings regarding defendant's sentences.

## I. JURY COMPOSITION

Defendant first argues that his first trial was rendered unfair because the prosecutor improperly struck three jurors from his jury in violation of *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), under which a prosecutor is prohibited from using peremptory challenges to strike a juror from a defendant's jury on the basis of race. *People v Bell*, 473 Mich 275, 278; 702 NW2d 128, as amended 474 Mich 1201 (2005). We disagree. We review the trial court's findings of fact for clear error, and the trial court's determination of whether those facts constitute discrimination is reviewed de novo as a matter of law. *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014).

A challenge to a peremptory strike first requires a prima facie showing of discrimination, which in turn requires defendant's membership in a cognizable racial group, a challenge that excludes a member of a racial group, and circumstances suggesting that the challenge was based on the juror's race. *People v Knight*, 473 Mich 324, 336; 701 NW2d 715 (2005). The prosecutor must then provide a facially race-neutral explanation for the challenge. *Purkett v Elem*, 514 US 765, 768; 115 S Ct 1769; 131 L Ed 2d 834 (1995). Finally, the trial court must further determine whether any such race-neutral explanation is actually credible, which may involve assessing its relevance to any reasonable trial strategy. *Bell*, 473 Mich at 283. "It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court

---

[3] The subject of Docket No. 325763.

[4] Matthews was convicted of several charges, including conspiracy to commit first-degree murder.

[5] Supreme Court Administrative Order 2004-6.

determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett*, 514 US at 768 (Emphasis in original). The opponent of the jury strike remains burdened by the obligation to establish a racial motivation. *Bell*, 473 Mich at 297-298.

During jury selection, the prosecutor used peremptory challenges to strike three potential jurors, all of whom were black. Defendant contended that the jurors were not objectionable, so the prosecutor's only possible reason to exclude them was race. The prosecutor did not remove all black potential jurors, which weighs against a showing of discrimination. *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). However, there were sufficiently few such jurors in the pool that we, as the trial court impliedly did, give defendant the benefit of the doubt as to a prima facie showing of discrimination. The prosecutor's explanations for all three jurors was facially race-neutral: the mother of one juror was friends with defense counsel; and the prosecutor recognized the unusual family names of the other two jurors from frequent interactions between law enforcement and people the prosecutor presumed must be family members that the jurors did not disclose. The prosecutor thus concluded that the first juror's relationship was "compromising," and the prosecutor believed the other jurors were being dishonest. These reasons are clearly facially race-neutral.

Consequently, the gravamen of this issue is whether the prosecutor's stated reasons were pretextual, which, as noted, turns largely on their credibility and relationship to a reasonable trial strategy. We find that defendant has not satisfied his burden of establishing pretext. We find nothing implausible about the prosecutor's concern regarding a potential juror's personal relationship, even if somewhat attenuated, with defense counsel. Furthermore, the prosecutor was able to point to other potential jurors—presumably white given the stated make-up of the jury pool—that she had dismissed for the same reason that she had dismissed that particular potential juror. We certainly find nothing improper about a reasonably supported concern that a potential juror is dishonest. Because we agree with the prosecutor that the other two potential jurors' names were indeed quite unique, and we would expect some recognition of unusual names that are commonly encountered, we do not find the prosecutor's exclusion of the other two jurors inadequately supported.

We appreciate defendant's complaint that African Americans are disproportionately more likely to be involved in law enforcement encounters in this society. Consequently, accepting the prosecutor's familiarity with the name of a family with such frequent encounters could place African Americans at a significant statistical disadvantage. However, we have no basis to conclude that any particular race is likely to have a disproportionate percentage of unusual family names. Likewise, we have no basis to conclude that any particular race is more likely to have families known for being involved with the criminal justice system. Furthermore, defendants are entitled to an impartial jury, not a jury consisting of specified races in a specified ratio. See, e.g., *Lockhart v McCree*, 476 US 162, 173; 106 S Ct 1758; 90 L Ed 2d 137 (1986) and *Taylor v Louisiana*, 419 US 522, 538; 95 S Ct 692; 42 L Ed 2d 690 (1975); see also *Pellegrino v Ampco Sys Parking*, 486 Mich 330; 785 NW2d 45 (2010). We expect few attorneys to be entirely comfortable with a member of any such family, completely irrespective of race, being relied upon for impartiality in a criminal matter.

Consequently, we find that defendant did not establish, here or before the trial court, that the prosecutor's peremptory challenges to the three jurors at issue was racially discriminatory or an infringement on his right to a fair trial.

## II. EVIDENCE OF MYCHAL REEVES'S MURDER

Defendant next argues that in both trials, he was unfairly prejudiced by the admission of evidence pertaining to the murder of Mychal Reeves under MRE 404(B). Defendant also contends that in his second trial, the evidence was inadmissible hearsay. We review for an abuse of discretion the trial court's ultimate decision whether to admit evidence, but we review any preliminary determination of admissibility de novo as a question of law. *People v Dobek*, 274 Mich App 58, 84-85; 732 NW2d 546 (2007). We conclude that the trial court did not abuse its discretion in admitting the evidence in either trial.

Under MRE 404(b), evidence is generally admissible if it is relevant pursuant to MRE 401 and MRE 402 so long as the evidence is not *solely* advanced for the purpose of showing a defendant's character or propensity to act in accordance therewith. *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010). In other words, it is a rule of *inclusion by default*, subject to exclusion only under a single and narrow circumstance; the list of reasons for admission provided in the rule is not exclusive. *Id*. at 616. However, any such evidence is additionally subject to *discretionary* exclusion under MRE 403, and "*may* be excluded if its probative value is substantially outweighed by the danger of [in relevant part] unfair prejudice . . . " (emphasis added). *Mardlin*, 487 Mich at 616. Although the trial court's decision is discretionary, the trial court is required to consider the implications of MRE 403 and, if asked to do so, may give a limiting instruction to the jury. *Id*.

The theory of the instant combined cases is that defendant was the orchestrator and initiator of a scheme to kill Charles to keep Charles from testifying in the Wayne County case. Defendant provided the murder weapon, even though he was not present during the murder itself. Specifically, defendant had Avantis arrange a meeting with Charles, ostensibly for the purpose of purchasing marijuana. Defendant provided Matthews with a "burner" gun to kill Charles, and Matthews and Terrance came along with Avantis. They were to wait to kill Charles until after Avantis had purchased the marijuana and the other person in Charles's car had left. Generally, defendant would eliminate persons against whom he sought retribution for perceived wrongs by enlisting the help of close friends or relatives to carry out the actual killings by setting up seemingly innocent meetings or transactions with the unsuspecting victims, and by supplying a weapon to the confederate tasked with the actual killing.

Consistent with that theory, the testimony was admitted at both trials from Avantis regarding the Reeves murder. The Reeves murder occurred in 2011 and was carried out by Terrance.[6] According to Avantis, Terrance told him that he did so at defendant's instigation in

---

[6] It should be remembered that Terrance was defendant's co-defendant in the first trial, and neither Terrance nor defendant were charged with Reeves's murder at that time, nor, insofar as we know, were either of them convicted of any crime arising out of that murder.

retaliation for Reeves previously shooting at Terrance's father and defendant, and for possibly killing defendant's brother. Defendant again provided the gun used. Matthews arranged a meeting with Reeves at Reeves's home for a supposed scam involving iPhones, and he provided a way for Terrance to enter Reeves's home. Terrance shot and killed Reeves while Matthews was present. Terrance and Matthews then returned the gun to defendant.

As stated, MRE 404(b) is a rule of inclusion that provides a nonexhaustive list of examples of proper purposes. The distinction may be subtle, but the proponent of such evidence need not establish one of the proper purposes listed, but rather only that it is *not* for an improper purpose. That the evidence may reflect on a defendant's character is immaterial unless that is all the evidence does. Here, the evidence was advanced for the purpose of showing that defendant had a common scheme or plan, to wit, masterminding and providing the means for an execution to be carried out by others who can gain confidential access to the victim; and a common motive, to wit, some manner of retaliation for a wrong, albeit preemptively so in the instant matter.

Our Supreme Court has held that "evidence that the defendant has committed uncharged acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts." *People v Sabin* (*After Remand*), 463 Mich 43, 66; 614 NW2d 888 (2000) (quotation omitted). We find that the two murders were clearly similar enough to warrant admission pursuant to MRE 404(b) under *Sabin*. Additionally, the trial court relied on elements of similarity, intent, and motive to show that the actions were not accidental or without guilty knowledge. Accordingly, the prosecution proved and the trial court properly accepted a proper, nonpropensity purpose for the admission of the Reeves murder.

Defendant argues that the danger of prejudice far outweighed the probative value. Notably, the jury was unable to convict *either* defendant or Terrance of their charged offenses of murder, conspiracy to commit murder, or witness intimidation. While not dispositive, this clearly suggests that the evidence was not so prejudicial that a jury would automatically accept that defendant murdered Charles. In any event, it is difficult to perceive how he was actually prejudiced at his first trial. At the second trial, the jury was properly instructed, and it is presumed that the jury followed its instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Furthermore, the remaining evidence against defendant—including Avantis's testimony about the instant matter, which was corroborated with the cell phone data, and the motive as established by Dudley's testimony—though circumstantial, was sufficient to convict defendant of murder, conspiracy to commit murder, witness intimidation, and felony-firearm. Accordingly, we find any error in the admission of the evidence harmless.

Defendant additionally argues that Avantis's testimony was suspect because he received a plea deal. The jury was properly informed of that deal. Consequently, any suspicion that might attach to Avantis's testimony because of the deal goes to weight, not admissibility, and the jury was the ultimate decision maker regarding credibility. *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005).

In the second trial, defendant also asserted that Avantis's testimony was inadmissible hearsay. The trial court concluded that it was admissible under 804(b)(3) as a statement against interest by an unavailable witness. Defendant concedes that the statements were nontestimonial,

so admission of the statements is governed solely by MRE 804(b)(3). *People v Taylor*, 482 Mich 368, 374; 759 NW2d 361 (2008). On appeal, defendant asserts that there was no court ruling or evidence in the record to show he was unavailable, but did not preserve that particular objection in the trial court. We therefore review this issue for plain error that affected defendant's substantial rights. See *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003).

Pursuant to MRE 804(a)(1), a witness is unavailable is he "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement." Pursuant to MRE 804(b)(3), if a witness is unavailable, statements at the time of their making that would tend to subject the declarant to criminal liability are admissible. On appeal, defendant does not contend that the statements were not statements against Terrance's interest. Rather, defendant focuses on whether Terrance was actually "unavailable." He argues that Terrance had no automatic privilege because he was not a defendant in this case[7]; that there was no court ruling that he was unavailable; and that the prosecutor never offered evidence to show he was unavailable or would "take the Fifth."

As noted, there was no dispute in the trial court that Terrance was unavailable, as the prosecutor asserted. In the absence of any particular dispute or contrary evidence, a trial court does not automatically err by accepting the representations of an attorney bound by a duty of candor to the court. See *People v Garland*, 286 Mich App 1, 7-8; 777 NW2d 732 (2009). The trial court thus implicitly did rule that Terrance was unavailable. Furthermore, the evidence affirmatively supports such a finding: as noted, there had been no trial, let alone an acquittal, regarding the Reeves murder, so Terrance's acquittal in the first trial was no protection against possible charges against him regarding Reeves. Any testimony he gave regarding his involvement in Reeves's murder would have exposed him to such charges. See *People v Russell*, 27 Mich App 654, 662; 183 NW2d 845 (1970) ("[W]here a voluntary offer of testimony upon any fact is given, there is a waiver of the privilege against self-incrimination as to all other relevant facts."). Additionally, defendant himself attempted to subpoena Terrance and acknowledged that Terrance might "plead the Fifth." Apparently, Terrance did not appear. Under the circumstances, the trial court's implicit determination that Terrance was unavailable was not plain error. Because Terrance was unavailable, his statements fell squarely within the MRE 804(b)(3) exception, making them admissible.

## III. DUDLEY'S IDENTIFICATION

In both cases, defendant contends that the trial court erred by failing to exclude a "tainted" identification of defendant by Dudley. We disagree. This Court has already considered the same arguments pertaining to Dudley's February 12, 2013 recorded interview and held:

> [W]e find no record support for defendant's claim that Dudley identified defendant in a photographic lineup. To the contrary, Detective Kevin Nance testified at trial that the photographic lineup shown to Dudley did not include

---

[7] Again, it should be remembered that Terrance was a co-defendant in the first trial.

defendant's photograph. We therefore reject defendant's unpreserved claim of prosecutorial misconduct premised on an alleged suggestive photographic lineup.

* * *

In addition, we find no support for defendant's argument that the prosecutor used a false identification of him by Dudley at trial to obtain a conviction. Although the district court found that Dudley's identification testimony at defendant's preliminary examination lacked credibility, the jury was the ultimate trier of fact. Moreover, considering the other trial evidence, including defendant's admission in his own testimony that he was the driver of the Expedition, Dudley's identification testimony clearly was not necessary for the prosecution to obtain a conviction. Therefore, we find neither plain error nor prejudice. The prosecution did not knowingly use false testimony to obtain a conviction. [*Wimberly*, Docket No. 321490, unpub at 14-15 (citations omitted).]

Because this Court has already considered the Dudley identification issue on the merits, in the case in which the identification actually occurred, and concluded that there was no misconduct and that the identification was not unduly suggestive, we decline to reconsider this issue now.

## IV. MATTHEWS'S STATEMENT

Defendant argues that during the second trial, a police witness impermissibly made references to a statement made by his co-defendant Matthews to the police when Matthews was contemplating becoming a prosecution witness. Defendant contends that these references constituted both police and prosecutorial misconduct, improper vouching, and violations of the prohibition against admission of a nontestifying co-defendant's statements implicating the defendant during a joint trial. We disagree.

In *Bruton v United States*, 391 US 123, 126; 88 S Ct 1620; 20 L Ed 2d 476 (1968), "the United States Supreme Court held that a defendant is deprived of his Sixth Amendment right to confront witnesses against him when his nontestifying codefendant's statements implicating the defendant are introduced at their joint trial." *People v Pipes*, 475 Mich 267, 274-275; 715 NW2d 290 (2006). In *Richardson v Marsh*, 481 US 200; 107 S Ct 1702; 95 L Ed 2d 176 (1987), the Supreme Court concluded that no *Bruton* violation occurred where the co-defendant's confession was redacted to eliminate "not only the defendant's name, but any reference to his or her existence." *Id.* at 211. It, thus, limited *Bruton* "to situations in which facially incriminating statements made by nontestifying codefendants are used at trial." *People v Frazier*, 446 Mich 539, 546; 521 NW2d 291 (1994).

We note initially that the police detective in question had already been excused when defendant insisted that the detective be recalled because his testimony might have left the jury with the possibility that defendant had been in the car, even though the prosecutor noted that no one had made that argument and no one would. The detective was nevertheless recalled, and defendant probed the detective regarding details of the police investigation that ultimately excluded defendant from having been in the car. During the course of that testimony, the detective enumerated a list of reasons and noted that "the totality of those circumstances led us to

believe that [Peak] possibly wasn't being truthful. We followed the evidence. We did the right thing and that's what our concern was." In response to a jury question asking whether anything other than Peak had indicated whether or not defendant was in the car, the detective additionally referenced statements made by Matthews and Avantis, noted that they were consistent with each other, and concluded by noting what he "believed" on that basis.

Notably, the actual statements made by Matthews were not admitted. To the extent it might be possible to infer their contents, each reference to the statement and its "consistency" was in response to a question that expressly limited it to one of two issues: that the statement, along with other evidence, corroborated a video recording from Wal-Mart to lead the police to believe that Peak had lied during the preliminary examination, and that defendant was not present in the car. Defendant's entire purpose in recalling the detective was to establish that defendant was not in the car, and he succeeded in doing so—consequently, it is difficult to understand how the testimony could have prejudiced him. Furthermore, the detective's remarks concerning his "beliefs" do not constitute improper vouching. After reviewing the remainder of the detective's testimony, it is abundantly clear that his use of variations on "I believe" was simply his personal mannerism to express conclusions that he drew. Defendant's assertion that, somehow, the jury could infer that Matthews's statement and Avantis's statement were the same on every issue is not supported by the evidence.

Ultimately, when reviewed in context, each statement simply indicated that Matthews had made a statement and that, based on the corroborating nature of his statement with Avantis's statement and the Wal-Mart video, the police did not "believe"—i.e. the evidence did not show—that defendant was in the car with Terrance and Avantis when the shooting occurred. Accordingly, the statements were not error and defendant's claims of police and prosecutorial misconduct must fail.

## V. CELL PHONE TESTIMONY

Defendant next argues that at his second trial, the trial court erroneously admitted testimonial evidence regarding cell phone locations and towers without a qualified expert or the records upon which the testimony was based. The latter is simply incorrect: the certified cell phone records and the charts the witness made based on those records and about which he testified were admitted, with the charts properly admitted as summaries of the data pursuant to MRE 1006. See *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 100; 535 NW2d 529 (1995). We agree that the witness was not qualified as an expert, but because defendant did not object, our review is for plain error affecting substantial rights. *Bulmer*, 256 Mich App at 35. We are unpersuaded that an expert was entirely necessary, but the record shows that in any event the witness would have qualified as an expert had a request for qualification been made. We therefore find no error affecting defendant's substantial rights.

Regarding the need for expert testimony, defendant relies on two federal circuit court cases that are not binding on our Court. *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013). Furthermore, both of those cases involved far more technical knowledge regarding the way in which cell phone towers work at an engineering level than was necessary in this case. See *United States v Yeley-Davis*, 632 F3d 673, 683-684 (CA10, 2011) and *United States v Evans*, 892 F Supp 2d 949, 952 (N.D. Ill, 2012). In contrast, the witness here expressly declined to

answer a jury question pertaining to the technical workings of cellular towers, stating, "That is an engineering question that I am not qualified to answer." The witness testified regarding records, not the intricacies of how the towers themselves worked. We are not persuaded that a forensic examination of cell phone record data calls for the expertise of an engineer, and indeed, an engineer might be the wrong field to conduct the analysis at issue in any event.

Nevertheless, MRE 702 permits a witness to be qualified on the basis of his knowledge, skill, training, or education. As noted, there was no objection at trial to the witness's qualifications. The witness testified that he had received "a couple formal trainings" related to cell phones and reviewing cell phone records—one sponsored by the National Guard and one through the Secret Service. He had been using cell phone records and examining them for over 10 years and was a member of "The United States Secret Service Electronic Crimes Taskforce." This testimony sufficiently established that he was qualified to offer the cell phone record analysis at issue here. See *People v Ray*, 191 Mich App 706, 707-708; 479 NW2d 1 (1991) (discussing police expertise with respect to drug issues). Moreover, "[g]aps or weaknesses in the witness' expertise are a fit subject for cross-examination, and go to the weight of his testimony, not its admissibility." *People v Gambrell*, 429 Mich 401, 408; 415 NW2d 202 (1987).

Because the record establishes that the witness was qualified to provide the testimony he did, the underlying records were admitted, and the charts were properly admissible as summaries, there was no misconduct, and defendant cannot show plain error affecting his substantial rights.

## VI. POLYGRAPH REFERENCE

Defendant next asserts that he is entitled to a new trial because Avantis made one reference to a polygraph examination. Both parties agreed, correctly, that the reference was improper. *People v Nash*, 244 Mich App 93, 98; 625 NW2d 87 (2000). The trial court denied defendant's request for a mistrial, but it did give the jury a curative instruction at both parties' requests. We review a trial court's decision whether to grant a mistrial for an abuse of discretion. *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009). A mistrial is an extraordinary remedy reserved for egregiously prejudicial errors that cannot be remedied in any other way. *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988).

As noted, a polygraph reference is error, but it is not necessarily error automatically mandating reversal, particularly if it is a solitary and brief reference not otherwise emphasized to the jury. *People v Kahley*, 277 Mich App 182, 183-184; 744 NW2d 194 (2007). This Court generally considers

> (1) whether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster a witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted. [*Nash*, 244 Mich App at 98 (citations and quotation marks omitted).]

It was in fact the prosecutor who cut off the witness during a defense cross-examination to preclude any further references, and both parties sought a cautionary instruction. The reference appears to have been an inadvertent and natural response to defense counsel's question. The reference also does not appear to have been intended to bolster Avantis's credibility, and the results of the test were not admitted—indeed, they were not even referenced. Additionally, defendant has provided no indication, and we can find none in the record, to suggest that the reference actually had the slightest effect whatsoever on the outcome of the proceedings. See *People v Jones*, 468 Mich 345, 359; 662 NW2d 376 (2003).

Consequently, we are unable to discern any reason why the trial court's refusal to grant a mistral constituted an abuse of discretion.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied effective assistance of counsel, alleging nine instances thereof during the course of his second trial. We disagree.

Whether a defendant has been deprived of the effective assistance of counsel is a mixed question of fact and law and is reviewed, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "When no *Ginther* hearing has been conducted, [this Court's] review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). We note that defendant did properly file a motion to remand for a *Ginther* hearing, and it is not lost on us that it is generally unfair to punish a party for a decision made by a court. See, e.g., MCR 2.517(7), explicitly stating that parties need do nothing to preserve for appeal a challenge to a finding or decision made by a trial court. Nevertheless, upon full plenary review of this matter, we continue to find nothing in the record or defendant's arguments to suggest that a *Ginther* hearing would have been worthwhile.

Six of defendant's allegations of ineffective assistance pertain to the references to Mathew's statement discussed above in Section IV. As we stated, no error occurred; consequently, any objection raised by counsel would have been futile and meritless. Counsel is not ineffective for failing to engage in a meritless or futile act. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998); *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Likewise, defendant bases another allegation of ineffective assistance on the lack of qualifications of the cell phone testimony discussed in Section V. Although we did take note of defendant's failure to object, as stated, we would have found no error even if defense counsel had done so; at most, an objection by counsel would have resulted in a mere formality of qualifying the witness. Therefore, any such objection would not have affected the outcome of the proceedings, so the failure to do so cannot constitute ineffective assistance. See *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009).

Defendant bases another allegation of ineffective assistance on the failure to obtain the transcripts of the first trial in order to effectively cross-examine Dudley regarding her photo identification in the Wayne County case. As we discussed in Section III, this Court ruled in *Wimberly*, Docket No. 321490, unpub at 14-15, that there was no misconduct and that the

identification was not unduly suggestive. Counsel cannot be faulted for failing to obtain a transcript that would not have revealed anything useful.

Finally, defendant asserts that "in the event the Court feels defense counsel did not sufficiently detail or specify his objections to the testimony of Avantis Parker insofar as objecting to Parker's testifying about Matthews' hearsay about the Rule 404(b) murder." As we discussed in Section II, we found the evidence properly admitted, and we would have done so irrespective of whether defendant had properly preserved the errors alleged on appeal.

Ultimately, we find that the alleged omissions on the part of trial counsel either would not have affected the outcome of the proceedings or would not have been meritorious had they been raised or both. As noted, counsel is not ineffective for failing to engage in a meritless or futile act.

## VIII. CUMULATIVE ERROR

Defendant alleges that his second trial was tainted by cumulative error. Again, we disagree. An accumulation of errors, any of which would not necessarily mandate reversal by itself, can in combination result in a trial that is ultimately unfair; however, each of those errors must be of some consequence. See *People v Knapp*, 244 Mich App 361, 387-388; 624 NW2d 227 (2001). No errors of any consequence occurred, so no accumulation thereof could constitute sufficient cumulative error to warrant a new trial.

## IX. *LOCKRIDGE*[8] ISSUES

Finally, in both cases, defendant argues that he is entitled to resentencing under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). *Lockridge* held that sentencing guidelines scores may only be based on facts admitted by the defendant or necessarily found by the jury, and any sentence outside the range dictated by the guidelines so scored on the basis of judge-found facts must be treated as a departure. See *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 321303, issued September 8, 2015), slip op at 6-8. This issue was not raised at the time of sentencing, so it is technically unpreserved, but preserved and unpreserved *Lockridge* issues are practically treated the same way. *Id.*, slip op at 11. We therefore note that defendant's contention that trial counsel was ineffective for failing to raise a *Lockridge* challenge at his second trial fails: as discussed previously, ineffective assistance of counsel depends in relevant part on whether an alleged omission could have changed the outcome of the proceedings.

We note as an initial matter that defendant is serving a mandatory life sentence without parole for first-degree murder in this consolidated case. Consequently, at first glance it would seem that analyzing the propriety of his other sentences is moot, or at best a technical exercise. However, we are an intermediate appellate court; our affirmance of his convictions is not "the last word," and it is always possible that his murder conviction could be overturned by another

---

[8] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

court of greater authority. Under such a circumstance, defendant's other sentences would immediately become relevant. Therefore, we address all of defendant's sentences rather than presume to predict what another court might decide.

At sentencing after defendant's first trial, there can be no question that the trial court scored defendant's sentencing guidelines variables entirely on the basis of judge-found facts. Defendant was scored for actions that made up the charges on which the jury deadlocked, so they were neither admitted by defendant nor found by the jury.[9] Consequently, defendant is entitled to have this matter remanded to the trial court for resentencing pursuant to the *Crosby* procedure. *Stokes*, slip op at 8-12. However, defendant may, should he wish to avoid resentencing, promptly notify the trial court that he wishes to avoid it. *Id*., slip op at 11-12.

Defendant concedes that his guidelines range would not change for his sentences after his second trial, even if the guidelines variables he challenges were deleted. Under *Lockridge*, there is no error if there is no prejudice. *Lockridge*, 498 Mich at 394-395. Consequently, defendant is not entitled to resentencing for his second trial.

## X. CONCLUSION

In Docket No. 325763, we affirm defendant's convictions and sentences. In Docket No. 322923, we affirm defendant's convictions, but remand for proceedings consistent with the opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ William B. Murphy
/s/ Amy Ronayne Krause

---

[9] Although defendant was *later* convicted of those actions at the second trial, they had not been properly established at the time.

-12-