# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT ERWIN STUMPMIER,

        Defendant-Appellant.

UNPUBLISHED
April 25, 2017

No.  330145
Monroe Circuit Court
LC No.  14-041399-FH

Before:  MURPHY, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Robert Stumpmier, was convicted after a jury trial of six counts of possession of child sexually abusive material, MCL 750.145c(4), and six counts of using a computer to commit a crime, MCL 752.797.  He was sentenced to concurrent prison terms of 18 to 84 months for the possession of child sexually abusive material convictions and 365 days for using a computer to commit a crime convictions.  He appeals his convictions as of right, raising three claims of error.  For the reasons stated in this opinion, we affirm.

## I.  BASIC FACTS

The Monroe Police Department received information that led them to believe that Stumpmier possessed child pornography.  They executed search warrants at Stumpmier's home and at a music store he operated, and seized computers and other evidence.  An analysis of the computer hard drive disclosed numerous digital images of naked males.  The police isolated 131 images that they felt possibly depicted underage males and had these images analyzed by Dr. Randall Schlievert, a medical doctor who had previously assisted law enforcement during similar investigations.  Dr. Schlievert reviewed the images and opined that six of the images were of youths under 18 years of age.  Based on these images, Stumpmier was charged with six counts of possession of child sexually abusive material and six counts of using a computer to commit a crime.  At the trial, in addition to the testimony of police officers who were involved in the investigation and the analysis of the seized evidence, the prosecutor also presented the "other acts" testimony from two teenage boys who had interacted with Stumpmier at his music store and as members of a 4-H group.  The prosecutor also presented Dr. Schlievert's opinion testimony after having him qualified as an expert witness.  Stumpmier presented the testimony of Dr. Arlan Rosenbloom as a defense expert witness to counter Dr. Schlievert's testimony.  Dr. Rosenbloom opined that the age of the males in the photographs could not be ascertained.

-1-

## II. EXPERT WITNESS

## A. STANDARD OF REVIEW

Stumpmier first contends that the trial court erred in admitting Dr. Schlievert as an expert with regard to childhood growth and physical maturity. This Court reviews questions regarding a trial court's determination of a witness's qualification as an expert for an abuse of discretion. *People v Gambrell*, 429 Mich 401, 407; 415 NW2d 202 (1987). An abuse of discretion is shown when the court's "decision falls outside the range of principled outcomes." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

## B. ANALYSIS

Regarding the admission of expert testimony, our Supreme Court stated in *People v Kowalski*, 492 Mich 106, 119-122; 821 NW2d 14 (2012) (opinion by MARY BETH KELLY, J.):

> MRE 702 establishes prerequisites for the admission of expert witness testimony. The rule provides:

>> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

> A court considering whether to admit expert testimony under MRE 702 acts as a gatekeeper and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable. The overarching goal is "to make certain that the expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Because there are many different kinds of experts and expertise, this inquiry is, by necessity, a flexible one, and a court determining the admissibility of expert testimony may consider reliability factors pertinent to the particular type of expert testimony offered and its connection to the particular facts of the case.

> Whatever the pertinent factors may be, however, a court evaluating proposed expert testimony must ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case. Although these considerations are separate and distinct and must be satisfied independently, they are, in fact, overlapping in nature. For example, "[a]n expert who lacks 'knowledge' in the field at issue cannot 'assist the trier of fact.' " Likewise, expert testimony without a credible foundation of scientific data, principles, and

-2-

methodologies is unreliable and, thus, unhelpful to the trier of fact. Indeed, proposed expert testimony must meet all the other requirements of MRE 702 in order to "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."

However, the threshold inquiry—whether the proposed expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue"—is also not satisfied if the proffered testimony is not relevant or does not involve a matter that is beyond the common understanding of the average juror . . . . These considerations of relevancy and the need for expertise are independent of the other requirements of MRE 702. Thus, even proposed expert testimony that is offered by a qualified expert and based on reliable scientific data and methods may be properly excluded if it is not relevant to the facts of the case or is offered for a proposition that does not require the aid of expert interpretation. [Footnote citations omitted; alterations in original.]

Stumpmier was charged with violating MCL 750.145c(4). That statute prohibits the possession of *child* sexually abusive material, and it defines "child" as "a person who is less than 18 years of age." MCL 750.145(c)(4); MCL 750.145c(1)(c). Accordingly, the determination of the age of the persons depicted in the photographs was "a fact in issue" and was relevant to the matters at issue in the trial, and thus was properly a subject for which expert testimony could be admitted. *Kowalski*, 492 Mich at 121. While jurors may be perfectly capable of determining the apparent age of individuals in photographs where those photographs depict sexually immature individuals, it becomes more difficult after the person has passed through puberty. Assuming that a qualified witness can, by reason of "knowledge, skill, experience, training, or education," assist the jurors in determining the relevant fact of the age of the persons in the photographs, the witness's testimony would be appropriate under MRE 702. Furthermore, presuming the issue of an expert's qualification is properly presented, the trial court is called upon to determine if "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." MRE 702.

On appeal, Stumpmier cites *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007), for the proposition that the trial court has a responsibility to "ensure that any expert testimony admitted at trial is reliable." Stumpmier then challenges the fact that Dr. Schlievert was allowed to testify as an expert in childhood growth and maturity "despite it not being his area of expertise." However, Dr. Schlievert listed his qualifications and background, and based on this "knowledge, skill, experience, training, or education," the doctor established the basis of his claimed expertise. It was not necessary that he demonstrate that he possessed some type of degree or certification in order to present himself as an expert. Dr. Schlievert testified that he was board certified as a general pediatrician and in child abuse and neglect. He was a professor at three medical schools. He was the head of the child abuse program at Toledo Mercy Hospital and was a consultant to the Lucas County Children's Services, a position in which he provided medical evaluations for suspected child abuse and neglect. Although he had not published in the area of pediatric growth and maturity, he testified that practicing in the field of pediatric medicine and child abuse pediatrics involved having familiarity with the different stages of growth and development in normal children. Dr. Schlievert stated that over the previous 13

years he had examined "thousands upon thousands" of children "[f]rom all stages of infancy, newborns to [age] 18." He explained that in his current full-time child abuse practice, he mainly dealt with children from infancy to early adolescence. Dr. Schlievert was familiar with the Tanner staging method and with a study done by Marcia Herman-Giddens concerning application of the Tanner method to show a statistical correspondence between different Tanner stages and chronological age. Dr. Schlievert testified that the Tanner method was generally adopted within the pediatrics community; he used it to "stage" sexual abuse evaluations and he used it approximately 100 times a year for these evaluations. Dr. Schlievert explained that the Tanner method was not the only tool that was used to estimate age and he described other physical characteristics that would be examined to make an age determination. Dr. Schlievert testified that he had previously assisted law enforcement to determine if a photograph or video recording of an unknown individual depicted a child who was still a minor. He acknowledged that it was much easier to evaluate a live person than a photographic depiction. However, he stated that if there was not enough information in a photograph to make a determination, then he would have to "pass" on that photograph and conclude that the age could not be evaluated. Dr. Schlievert stated that he had previously testified in court regarding growth and the development of an individual, although he admitted his primary testimony as an expert involved child abuse and neglect. He had previously used the Tanner method about 10 times in child pornography case evaluations. Dr. Schlievert claimed that by using the Tanner method in some cases he had been able to pinpoint a child's age; that is, he was able to determine that the child was under age 18. Based on that testimony, we conclude that the trial court did not abuse its discretion in determining that he was an expert in child growth and development.

Moreover, at trial, Stumpmier chose to deal with the prosecutor's expert witness by presenting an expert witness of his own—one who would assert that it was not possible to determine the general age of the subjects in the prosecutor's photographic exhibits. Essentially this left the question of the age of the individuals in the photographs to the jury's determination, as assisted by whichever expert's testimony the jurors found more credible.[1] Therefore, based on the record before us, the trial court did not abuse its discretion by qualifying Dr. Schlievert as an expert witness.

---

[1] It should be noted that the statute does not require proof beyond a reasonable doubt that the person depicted in a photograph is in fact younger than 18. Presumably recognizing the difficulty in anyone determining the age of a person in a photograph, the Legislature has provided that the statute requires proof that a defendant:

> knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child *or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child*. [MCL 750.145c(4) (emphasis added).]

## III.  OTHER ACTS EVIDENCE UNDER MCL 768.27A

### A.  STANDARD OF REVIEW

Stumpmier next claims that the trial court abused its discretion by admitting other acts evidence pursuant to MCL 768.27a because the evidence was more prejudicial than probative. This Court reviews issues concerning the admission of other acts evidence for an abuse of discretion. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).

### B.  ANALYSIS

"When a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b)." *People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007).  Stumpmier was accused of violating MCL 750.145(c)(4), which is a "listed offense," MCL 28.722(s)(*i*).  The relevant other acts offenses that the prosecutor sought to present through the testimony of WK and NN constituted violations of MCL 750.145a, which penalizes accosting, enticing, or soliciting a child for immoral purposes; this is also a listed offense.  MCL 28.722 (u)(*i*).  Therefore, because Stumpmier was accused of committing a listed offense against a minor, evidence that he committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. *Pattison*, 276 Mich App at 618-619.

Evidence offered under MCL 768.27a nevertheless remains subject to review under the balancing test of MRE 403.  *Watkins*, 491 Mich at 481.  "Accordingly, when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487.

> There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.  This list of considerations is meant to be illustrative rather than exhaustive. [*Id*. at 487-488.]

Here, one of the other acts witnesses, WK, testified that while he was a minor working for Stumpmier at his music store, Stumpmier discovered that WK believed himself to be bisexual.  Stumpmier thereafter encouraged WK to engage in sexual relations with other boys or young men.  This culminated in Stumpmier arranging for and enabling WK and another employee to meet in a practice room in the store and have oral sexual relations.  Subsequently Stumpmier took a photograph of WK's penis.  WK also testified that Stumpmier encouraged him to have sexual relations with the other witness, NN.  Similarly, NN testified that after Stumpmier learned that he was "bi-curious," Stumpmier encouraged him to have oral sexual relations with WK.  Stumpmier had even driven WK and NN to NN's house for an overnight visit, and on the way encouraged them to have oral sex and not to wear any clothes while doing it.

Stumpmier's encouragement of WK and NN to have oral sexual relations was somewhat dissimilar to his act of possessing photographs of naked boys or young men engaging in sexual acts or displaying their genitals. At the same time, his act of forcing WK to take down his pants to allow Stumpmier to photograph his penis (and thus possess a photograph of the penis of a child under 18) was very similar to the charged offense. Nevertheless, it seems clear that the purpose behind both Stumpmier's encouragement of sexual relations between WK and NN and his possession of photographs depicting similar behavior was to stimulate Stumpmier's sexual imagination. Both acts shared this similarity. The other acts occurred beginning in late 2012 and continued for some time; the police were informed of WK's allegations in February of 2014, so the prior acts happened relatively close in time to the discovery of the charged offenses. WK's and NN's testimony suggests that the other acts occurred relatively frequently during the time frame of late 2012 through 2013. There was no testimony concerning any intervening acts. The accounts of Stumpmier's behavior related by WK and NN provided support for each other's testimony. Their testimony also derived some independent support from the fact that they both met Stumpmier through the Monroe Music Maker's group that Stumpmier led, and both of them interacted with Stumpmier at his music store. Additionally, the nature of the interaction that Stumpmier had with the boys was similar to the passive act of possessing the photographs; that is, Stumpmier did not physically or sexually interact with the boys but encouraged them to interact with each other, presumably as a sexual stimulus. That is similar to how possession of pornographic photographs of young boys did not involve active interaction with the subjects of the photographs but presumably provided a sexual stimulus.

Therefore, properly considering the propensity inference presented by this testimony in conjunction with the non-exhaustive list of considerations given in *Watkins*, it appears more likely that Stumpmier was aware of the apparent ages of the persons depicted in the photographs he possessed, and that, in fact, the reason he possessed them was precisely the subjects' young ages. The other acts testimony supported the conclusion that Stumpmier was interested in sex involving young boys. It also made it more probable that he was intentionally obtaining nude photographs of young boys displaying their genitalia or engaging in sexual relations. We therefore conclude that the trial court did not abuse its discretion by admitting the prior acts testimony.

## IV. CORRECTION OF PRESENTENCE REPORT

### A. STANDARD OF REVIEW

Stumpmier finally claims that this case must be remanded to the trial court for correction of the presentence investigation report (PSIR). "There is a presumption that the information contained in the PSIR is accurate unless the defendant raises an effective challenge. When a defendant challenges the accuracy of the information, the defendant bears the burden of going forward with an effective challenge. If an effective challenge has been raised, the prosecution must prove by a preponderance of the evidence that the facts are as the prosecution asserts." *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009) (citations omitted). A trial court's determination that a PSIR is accurate is reviewed for an abuse of discretion. *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). Plain error contained in the PSIR that does not affect the defendant's substantial rights does not necessitate a remand for correction of the PSIR. *People v McCrady*, 244 Mich App 27, 32; 624 NW2d 761 (2000). A preserved

claim of inaccuracy in a PSIR is reviewed to determine if it is harmless beyond a reasonable doubt. *People v Harper*, 479 Mich 599, 642-644; 739 NW2d 523 (2007).

## B. ANALYSIS

Stumpmier proffers nothing on appeal that establishes that there is an error requiring any action by this Court. Stumpmier bears the burden of raising an *effective* challenge to the PSIR. *Lloyd*, 284 Mich App at 705. In order to make an effective challenge, he must provide support for his claims. *People v Lucey*, 287 Mich App 267, 277; 787 NW2d 133 (2010). And he must also show that failure to correct the alleged inaccuracies will cause him harm; that is, Stumpmier must show that the inaccurate information deprives him of a substantial right. *McCrady,* 244 Mich App at 32. Stumpmier failed to provide support for his challenges and has also failed to demonstrate that the claimed inaccurate information has deprived him of a substantial right. Accordingly, Stumpmier has failed to demonstrate prejudicial error that would require this Court to remand this case for a hearing at which the trial court would consider and resolve each challenge.

Affirmed.

/s/ William B. Murphy
/s/ Christopher M. Murray
/s/ Michael J. Kelly