RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0338P (6th Cir.)
File Name: 02a0338p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DION HARDAWAY,
     *Petitioner-Appellee/*
     *Cross-Appellant,*

    Nos. 01-1456/1506

*v.*

PAMELA WITHROW,
     *Respondent-Appellant/*
     *Cross-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-75294—Arthur J. Tarnow, District Judge.

Submitted: August 1, 2002

Decided and Filed: September 30, 2002

Before: NELSON, BOGGS, and NORRIS, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Carolyn M. Breen, WAYNE COUNTY
PROSECUTOR'S OFFICE, Detroit, Michigan, for Appellant.
Sanford Plotkin, Farmington Hills, Michigan, for Appellee.

1

---

**OPINION**

---

DAVID A. NELSON, Circuit Judge.   This is a habeas corpus case brought by a man convicted in a Michigan court of second degree murder.   The petitioner sought federal habeas relief on a variety of grounds, only two of which are of concern to us here.   Both of the pertinent claims involve the state trial court's jury instructions.

The first claim turns on whether the trial court did or did not furnish the jury a supplemental instruction on involuntary manslaughter, as opposed to voluntary manslaughter, after the jury asked for copies of the original instructions dealing with second degree murder and voluntary manslaughter.   The state appellate court to which the conviction was appealed recognized that it would have been error to give an instruction on involuntary manslaughter, but found that no such instruction had in fact been given.

Rejecting the state court's finding, the federal district court granted habeas relief on the strength of a presumption as to the accuracy of a transcript which indicated that the state trial judge told counsel that he had sent the jury a copy of an "involuntary" manslaughter instruction.   As to the petitioner's second claim, which involves an omission (not objected to at trial) in the instruction on second degree murder, the district court denied relief.[1]   The present appeal and cross-appeal followed.

We shall affirm the judgment of the district court insofar as habeas relief was denied.   The granting of a writ of habeas corpus on the first claim was patently erroneous, however, and we shall reverse the grant of the writ.

---

[1] The district court's opinion has been reported as *Hardaway v. Withrow* (hereinafter cited as "*Withrow*"), 147 F.Supp.2d 697 (E.D. Mich. 2001).

I

The petitioner, Dion Hardaway, shot and killed a man named Mario Lenzy in the course of an aborted drug transaction. Mr. Hardaway was tried in the Detroit Recorder's Court on charges that included first degree murder and possession of a firearm in the commission of a felony. Hardaway testified at trial that he had shot Lenzy in self defense. At most, defense counsel argued, Hardaway was guilty of voluntary manslaughter. The prosecution's theory was that Hardaway had killed Lenzy by design – and had intended to kill two other drug buyers as well – in order to facilitate a robbery.

After both sides had rested their cases, the trial judge delivered a jury charge that included instructions on first degree murder and the lesser included offenses of second degree murder and voluntary manslaughter. The transcript of the charge conference that preceded delivery of the instructions shows that the voluntary manslaughter charge was the subject of considerable attention.

Discussion of this charge began when the judge mentioned that he was adding an instruction on "manslaughter," among other things. The following colloquy ensued:

"[PROSECUTOR]: Which manslaughter are you going to be adding, Judge?

THE COURT: Voluntary manslaughter. Is that the one you're requesting?

[DEFENSE COUNSEL]: Yes.

\* \* \*

THE COURT: All right. I can give 16.9, which is specifically voluntary manslaughter as a lesser included offense of murder.

\* \* \*

THE COURT: Sixteen ten is involuntary manslaughter, so I'm not going to give that. I guess I'll just give sixteen nine unless either counsel has some objection.

[DEFENSE COUNSEL]: I have no objection.

THE COURT: Or I should say the other one I could give is sixteen eight, which just gives the elements. I think I'll just give sixteen nine unless either of you has a problem with that."

At this point, according to the transcript, the prosecutor presented an argument against the giving of any voluntary manslaughter charge. Counsel for the defendant made a counter argument, contending that such a charge was essential. The court sided with the defendant, referring to a discussion of "imperfect self-defense" in the commentary on the standard form jury instructions and stating that "I think we really need to give voluntary manslaughter based on that."

The verdict form furnished to the jury was consistent with the foregoing discussion. The form gave the jury four options for a verdict with respect to the homicide charge: (1) not guilty, (2) guilty of first degree premeditated murder, (3) guilty of second degree murder, and (4) guilty of voluntary manslaughter.

After the full charge (including the charge on voluntary manslaughter) had been read to the jury and deliberations had commenced, the foreman, whose name was Fred Davis, sent the court a note that resulted in the jury's being brought back to the courtroom. What occurred next is reflected in the transcript as follows:

"THE COURT: All right, Mr. Davis, you're the foreperson?

JUROR NO. 14: Yes.

failure to explain one of the elements of the crime of second degree murder is **AFFIRMED**. The order granting a writ of habeas corpus on the basis of the state trial court's alleged delivery of an involuntary manslaughter instruction is **REVERSED**. The case is **REMANDED** to the district court with instructions to dissolve the writ.

*Correctional Services,* 69 F.Supp.2d 388, 397 (E.D.N.Y. 1999); *aff'd* 235 F.3d 804 (2nd Cir. 2000)." *Id.*

As to the case at bar, the district court acknowledged that the particular instruction challenged by Mr. Hardaway failed to tell the jury that proof of the killing's having been without justification or excuse was one of the elements of the crime. As the district court went on to point out, however, the state trial court instructed the jury on self defense and made it clear that it was not up to Mr. Hardaway to prove that he had acted in self defense; it was up to the prosecution, rather, to prove beyond a reasonable doubt that Hardaway did not act in self defense.

Pretermitting the question of whether Hardaway's claim was barred by his procedural default in failing to object to the trial court's instructions, the district court resolved the merits of the claim as follows:

"This Court concludes that the trial court's instructions as a whole adequately explained to the jury that the prosecution had to prove that the killing was not justified or excused in order to find petitioner guilty of second degree murder. The jury was informed of the defense of self-defense and the prosecutor's burden of proving that petitioner did not act in self-defense. Therefore, the jury was informed that they would have to find that the killing was not justified or excused in order to find petitioner guilty of second degree murder. Petitioner is not entitled to habeas relief on this part of his claim." *Withrow*, 147 F.Supp.2d at 708.

We agree.

Mr. Hardaway advanced other claims in the district court, but there is no need for us to address them here because they have not been pressed on appeal. Only two issues are before us now, and we decide them as follows:

The district court's rejection of Mr. Hardaway's claim for habeas relief on the basis of the state trial court's alleged

THE COURT: And I just got a note from you saying: Judge Drain, please give us a definition of second-degree murder. And it's signed by you.

JUROR NO. 14: Uh-huh.

THE COURT: All right. What I can do is I can re-read the elements of second-degree murder. Is that what you wanted?

JUROR NO. 14: Yes.

THE COURT: Okay. All right. For the offense of second-degree murder the prosecution must prove two things beyond a reasonable doubt. Again, first, that the defendant caused the death of Mario Lenzy. And that is that Mr. Lenzy died as a result of the shooting. Secondly, the prosecution must prove that the defendant had one of these three states of mind at the time of the act. And that is that either the defendant intended to kill Mr. Lenzy, or that the defendant intended to cause great bodily harm to Mr. Lenzy, or that the defendant knowingly created a high risk of death or bodily harm knowing that death or bodily harm would result from his actions. And those are the two things that must be proven beyond a reasonable doubt.

All right. Does that answer the question, Mr. Davis?

JUROR NO. 14: Yes, that answers the question.

THE COURT: All right. Then you may retire to the jury room to continue deliberating."

After the jury left the courtroom, defense counsel told the court that one of the jurors had asked to have the manslaughter instruction repeated as well. The prosecutor confirmed the accuracy of this report: "The juror in Seat No. 5 was whispering to the foreperson and asking for the manslaughter instruction, so obviously at least one of them felt like they wanted to listen to that instruction again." The

prosecutor and defense counsel agreed that the voluntary manslaughter charge should be repeated, although the prosecutor asked that the first degree murder charge be repeated too.

The trial judge finessed the prosecutor's request by saying that he would wait to see if the jury asked for it:

"I'll wait and give them what they ask. Since the foreperson is really the spokesperson, I'll just wait till we hear from them. They'll probably come back out and ask for it. So I think I'll just wait."

The court then took a recess, after which the transcript is a blank until the case was called the next day. At that point, after the lawyers identified themselves, the judge noted further jury communications as follows:

"All right. Let me just say, gentlemen, that I did get a note wherein the jury asked for a Xerox copy of 2nd Degree Involuntary Manslaughter and I sent those in to them and we've just a couple of minutes ago got a note from them indicating they have a verdict so let's bring the jurors in."[2]

The phrase "2nd Degree Involuntary Manslaughter" makes no sense, of course. But in the context we have described, it would have made perfect sense for the judge to say "2nd Degree [Murder] and Voluntary Manslaughter." (On some

---

[2]A copy of the note in which the jury made its "Xerox copy" request is appended to the appellee's brief as Appendix A. It reads as follows:

"Judge:

May we have [a] Xerox copy of what the elements of 2nd degree murder and   manslaughter have – So that we may look and compare them.

Thank you,
Fred Davis."

Mr. Hardaway contends on appeal, as he did in the court below and in the Michigan Court of Appeals, that the second degree murder instruction was fatally defective because it omitted one of the elements of the offense. Although he never brought the omission to the attention of the trial court, Mr. Hardaway argues that the "plain error" doctrine excuses his default. He further argues that his conviction of second degree murder deprived him of liberty without due process of law, in violation of the Fourteenth Amendment of the United States Constitution, there being a reasonable probability that a properly instructed jury would have reached a different result. And without citing a United States Supreme Court decision on this point, he implies that the result reached in the state court system "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." See 28 U.S.C. § 2254(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act, which makes satisfaction of this "clearly established Federal law" test a condition for granting federal habeas corpus relief.

As the district court pointed out in its analysis of Mr. Hardaway's claim, the challenged instruction is not to be judged in isolation; it must be considered in the context of the entire jury charge. See *Withrow*, 147 F.Supp.2d at 707. Furthermore, as the district court went on to explain,

"To warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000). Allegations of trial error raised in challenges to jury instructions are reviewed for harmless error by determining whether they had a substantial and injurious effect or influence on the verdict. *Id*. A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *Fama v. Commissioner of*

Presumptions aside, the determination made by the Michigan Court of Appeals has the merit of being an eminently sensible one.  What the jury's note was obviously asking for was the second degree murder and manslaughter instructions that the jury had already heard the trial judge deliver orally.  The only manslaughter instruction on the table dealt with voluntary manslaughter.  Why in the world would any reasonable judge withhold the voluntary manslaughter instruction he had already given once and ring in an involuntary manslaughter instruction of which the jury had known nothing and about which it had obviously not inquired?  Why would any judge do such a bizarre thing without first consulting the parties' lawyers, both of whom had already asked the court to repeat the voluntary manslaughter charge?  And why would neither attorney show any reaction to the judge's announcement that he had gone so far off the track?

Unwilling to suspend the exercise of its common sense, the Michigan Court of Appeals gave the obvious answer:  the transcript notwithstanding, the trial judge had not given the jury a new and different instruction on manslaughter.  This answer has ample support in the record, and it is binding on the federal courts by reason of 28 U.S.C. § 2254(e)(1).

### B

In the trial court's instruction on second degree murder, the substance of which we have already quoted, the jury was told that in order to prove his second degree murder case the prosecutor would have to establish two elements beyond a reasonable doubt:  that the defendant caused the death of the victim, and that the defendant had one of three specified states of mind at the time of the killing.  Mr. Hardaway points out that where self defense has been claimed, however, the crime of second degree murder has a third element under Michigan law; the prosecutor must also prove that the death was not justified or excused.  See *People v. Dykhouse*, 418 Mich. 488, 345 N.W.2d 150 (1984).

tongues, if not most, the words "and voluntary" are hard to distinguish from "involuntary.")  Given the text of the jury's note, as quoted in footnote 2, the logical inference is that if the judge did not mispeak, he was indicating he had sent the jury copies of both the second degree murder instruction and the voluntary manslaughter instruction.  That would explain his use of the plural pronoun when he said he had sent "those" in to the jury.

The Michigan Court of Appeals, to which the petitioner appealed his second degree murder conviction, had no difficulty in drawing the logical conclusion.  Rejecting an argument to the effect that the trial court erroneously provided an involuntary manslaughter instruction when the jury requested clarification of the crime of voluntary manslaughter, the Court of Appeals said this:

"The transcript indicates that the trial court provided a copy of '2nd Degree Involuntary Manslaughter' to the jury.  Our review of the record leads us to conclude that the trial court misspoke or the trial court's statement was mistranscribed by the court reporter.  The crime of involuntary manslaughter was not at issue in this case.  Furthermore, there is no evidence in the record to support a conclusion that the jury was in fact given an instruction on involuntary manslaughter."

In December of 1998, following the affirmance of his conviction and after the denial of further review by the Michigan Supreme Court, Mr. Hardaway filed his habeas corpus petition in the United States District Court for the Eastern District of Michigan.  One of the claims advanced in his petition was couched in these terms:

"PETITIONER WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW WHEN THE TRIAL JUDGE ERRONEOUSLY GAVE AN INVOLUNTARY MANSLAUGHTER INSTRUCTION INSTEAD OF THE APPLICABLE VOLUNTARY MANSLAUGHTER INSTRUCTION WHEN THE

JURY ASKED FOR CLARIFICATION ON THE LAW
OF MANSLAUGHTER."

The district court granted relief with respect to this claim.
In so doing the district court declined to accept the state
appellate court's finding:

"The Court cannot accept the finding by the Michigan
Court of Appeals or the argument by respondent that the
trial court's comments about sending a copy of an
involuntary manslaughter instruction into the jury room
was either a mistranscription or a misstatement on the
part of the trial court. A court reporter's transcript is
presumed to be accurate or correct. *Abatino v. United
States*, 750 F.2d 1442, 1445 (9th Cir. 1985); *United
States v. Hoffman*, 607 F.2d 280, 286 (9th Cir. 1979).
Respondent has not offered any proof to rebut this
presumption, either in the state courts or with this Court.
Besides her own speculations, respondent does not
present any reason why this Court should suspect the
transcript to be inaccurate. *Norris v. Schotten*, 146 F.3d
314, 333 (6th Cir. 1998). This Court must therefore
presume that the trial court's comment about sending a
copy of an involuntary manslaughter instruction into the
jury room was accurately transcribed for purposes of
habeas review. To do otherwise would be to negate the
integrity of the appellate system. The transcript's
presumed accuracy is crucial." *Withrow*, 697 F.Supp.2d
at 709-10.

From the order in which the district court granted a writ of
habeas corpus, Respondent Pamela Withrow (the warden of
the institution where Mr. Hardaway is confined) perfected a
timely appeal. Mr. Hardaway has taken a cross-appeal from
the rejection of the remainder of his petition.

II

A

The Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. No. 104-132, 110 Stat. 1214, a statute that controls
this post-1996 habeas case, requires federal habeas courts to
presume the correctness of state court factual findings absent
clear and convincing evidence of incorrectness:

"In a proceeding instituted by an application for a writ
of habeas corpus by a person in custody pursuant to the
judgment of a State court, a determination of a factual
issue made by a State court shall be presumed to be
correct. The applicant shall have the burden of rebutting
the presumption of correctness by clear and convincing
evidence." 28 U.S.C. § 2254(e)(1).

This statutory presumption of correctness extends to factual
findings made by state appellate courts on the basis of their
review of trial court records. *Brumley v. Wingard*, 269 F.3d
629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S.
539, 546-47 (1981)).

In the matter now before us the Michigan Court of Appeals
found as a fact, on the basis of the full state trial court record,
that the hard copy of the manslaughter instruction furnished
to the jury replicated the voluntary manslaughter instruction
which the judge had read aloud to the jury as part of the
original charge. The document sent to the jury room,
according to the state appellate court, was not an involuntary
manslaughter instruction – it was not the type of instruction,
in other words, that the trial judge had explicitly told counsel
he was not going to deliver.

The only "evidence" offered to rebut the statutory
presumption as to the correctness of the state court's finding
consists of a nonstatutory presumption as to the correctness of
every word in the transcript. On the record before us, we
have no hesitancy in holding that in this case, at least, the
latter presumption does not trump the former.