*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES GREGORY STANICH II,

        Defendant-Appellant.

UNPUBLISHED
September 5, 2024

No. 361951
St. Clair Circuit Court
LC No. 21-000850-FC

Before: LETICA, P.J., and BOONSTRA and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, operating a motor vehicle while intoxicated causing death, MCL 257.625(4), and tampering with evidence for which the maximum term of imprisonment for the violation is more than 10 years, MCL 750.483a(6)(b).[1] The trial court sentenced defendant to 25 to 35 years' imprisonment for the second-degree murder conviction, 10 to 15 years for the operating a motor vehicle while intoxicated causing death conviction, and 7 to 10 years for the tampering with evidence conviction.[2] We affirm.

---

[1] MCL 750.483a(6)(b) proscribes the penalty for a violation of MCL 750.483a(5). The felony information delineated the substantive elements of the crime of tampering with the evidence.

[2] The trial court amended the judgment of sentence on August 3, 2022, after defendant filed his claim of appeal. The only change on the amended judgment of sentence was the minimum sentence for the tampering of evidence conviction, which was changed from seven years to 80 months.

## I. FACTUAL AND PROCEDURAL HISTORY

On March 7, 2021, at 7:00 p.m., defendant bought a multipack of Surf Onn at the Walmart in Lapeer.[3] He then sat in his truck in the Walmart parking lot until 8:54 p.m. When defendant left the Walmart parking lot, he headed east on Imlay City Road toward his home. At 9:01 p.m., a motorist called the St. Clair County's 911 Dispatch about an erratic driver on Imlay City Road. At 10:04 p.m., another motorist called St. Clair County Dispatch about a pickup truck traveling westbound in the eastbound lanes of I-69. St. Clair County Sheriff's Department Deputies Carl Wilczak and Zane King were driving to the location of the reported wrong-way driver when they received an update that there had been a collision on I-69 near M-19.

After the deputies arrived at the crash site, they blocked westbound traffic on the highway. Deputy Wilczak then approached a Dodge Challenger and a Honda Accord while Deputy King approached the truck. Deputy Wilczak found the driver of the Challenger, Graham Wiltse, who appeared to be deceased. Deputy Wilczak described the Challenger's passenger and the Honda Accord's driver as very upset and hysterical. Deputy King went to the truck's driver's side and saw defendant sitting on the passenger side. When Deputy Wilczak looked around the truck, he noticed aerosol spray cans and a Bud Light beer can in the grass, which the police collected.

At the hospital, defendant told Detective Timothy O'Donnell, a certified accident investigator with the St. Clair County Sheriff's Department, that he had inhaled Surf Onn earlier that evening in a Walmart parking lot. O'Donnell found seven cans of Surf Onn in the passenger compartment of defendant's truck as well as plastic bags and tissues, items consistent with inhaling Surf Onn. After this discovery, O'Donnell secured a search warrant for a blood sample from defendant. After receiving information that defendant tested positive for cocaine, tetrahydrocannabinol (THC), and difluoroethane (DFE), the prosecution charged defendant with second-degree murder, operating a motor vehicle while under the influence causing death, and tampering with evidence.

On appeal, defendant's appellate counsel challenges the sufficiency of the evidence for the second-degree murder and tampering with evidence convictions, the admission of other-acts evidence and expert testimony outside of the expert's training and knowledge, the trial court's failure to instruct the jury regarding accident, and the trial court's scoring of prior record variable (PRV) 7. In a Standard 4 brief,[4] defendant argues that the trial court improperly instructed the jury as to the element of malice for second-degree murder and that he was denied the effective assistance of counsel.

---

[3] Throughout the proceedings, the trial court, counsel, and witnesses referred to the product that defendant inhaled as both Surf Onn or Dust Off. Surf Onn is the proprietary brand of chemical duster that is marketed by Walmart.

[4] Supreme Court Administrative Order No. 2004-6.

## II. SECOND-DEGREE MURDER

Appellate counsel and defendant contend that there was insufficient evidence of malice to support the second-degree murder conviction as well as instructional error underlying this conviction. We disagree.

We review a challenge to the sufficiency of the evidence de novo by examining the record evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Haynes*, 338 Mich App 392, 417; 980 NW2d 66 (2021) (citation omitted). We resolve all conflicts in favor of the prosecution. *Id*.

To satisfy the elements of second-degree murder, the prosecution must prove the following: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse."[5] *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998) (citation omitted). The element of malice for second-degree murder has been defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 464. Thus, second-degree murder does not require a finding of a specific intent to harm or kill. *Id*. at 466. And "[t]he intent to do an act in obvious disregard of life-endangering consequences is a malicious intent." *Id*. A jury may infer malice from evidence that the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v Bailey*, 330 Mich App 41, 48; 944 NW2d 370 (2019); *People v Djordjevic*, 230 Mich App 459, 462; 584 NW2d 610 (1998). The prosecution is not required to establish that the defendant actually intended the harmful result. *Goecke*, 457 Mich at 466. Malice for second-degree murder may be established "even absent an actual intent to cause a particular result if there is wanton and willful disregard of the likelihood that the natural tendency of a defendant's behavior is to cause death or great bodily harm." *Id*.

In *Goecke*, 457 Mich at 448, the defendant and a friend met at a liquor store and purchased beer. For 90 minutes, they remained in the liquor store parking lot and drank beer. When a police cruiser drove into the parking lot, the defendant drove off to find another place to drink. The defendant drank beer as he drove around the area waiting for the police to leave. *Id*. at 448-449. Three hours later, the defendant was driving his car at approximately 70 to 80 miles an hour when he nearly struck a van. The defendant drove through a stoplight and struck a vehicle, and the other motorist died from injuries sustained in the collision. *Id*. at 449-450. The defendant's blood alcohol level was measured at .17 percent, and there were 15 to 20 empty beer bottles on the floor of the defendant's car. At the accident scene, the defendant admitted that he caused the accident, acknowledging that he was drunk and driving way too fast. *Id*. at 450.

Our Supreme Court held that there was sufficient evidence to bind the defendant over on charges of second-degree murder and the district court abused its discretion by failing to bind over

---

[5] Defendant does not dispute that Wiltse's death was caused by defendant's actions. He only asserts there was insufficient evidence of malice to support the second-degree murder conviction.

on that charge. *Id*. at 463, 469. The Court noted that the defendant evaded the police while drinking liquor in a store parking lot, giving rise to an inference that the defendant was aware that he was too intoxicated to be driving. Despite the knowledge of his condition, the defendant drove recklessly in a highly populated area, narrowly missed hitting another vehicle, and sped through a red light before colliding with the victim's car. *Id*. at 470-471.

In the instant case, defendant tested positive for cocaine, DFE, and THC. Mark Vandervest, a forensic scientist with the Michigan State Crime Laboratory who works on inhalant testing, testified about the use and effects of DFE. DFE is a hydrocarbon gas, which is not for human consumption, and does not appear in the blood as a result of food ingestion. Vandervest described DFE as an addictive and abusive product. He further explained that no clinical studies had been performed testing DFE because they could not be conducted ethically given the possibility of death from ingesting DFE. Vandervest also testified that, before the instant case, he had never encountered a positive result of DFE with a three-hour and 47-minute gap between a police stop, or in this case, a collision, and the blood draw.

Vandervest described the three methods usually used to inhale DFE. A user might spray the product into a plastic bag and place the bag over their face to inhale it. A user might directly spray the canister into their mouth. The user might also spray the product into a cloth and place it over their nose to inhale. After DFE is inhaled, it quickly crosses the blood brain barrier directly to the brain for an effect within seconds. Reported symptoms include feelings of euphoria, lightheadedness, and dizziness. Many users lose consciousness when inhaling DFE. Over time, DFE affects a user's body much like alcohol by impairing judgment and balance if used in a sufficient quantity. Because the product is inhaled, it is fast-acting and does not last long. Vandervest testified that if a person inhaled a large amount of DFE over a long period of time, they would become impaired.

In this case, there was evidence that defendant purchased Surf Onn twice on the day of the collision. After the second purchase, defendant sat in his vehicle for almost two hours in the Walmart parking lot where he purchased the Surf Onn. Detective O'Donnell found seven cans of the inhalant in the passenger compartment of defendant's truck and Sergeant Daniel Bueche, a traffic crash reconstructionist, found four cans of the inhalant outside of defendant's vehicle at the scene of the accident. At trial, Sergeant Bueche testified that the ingredient in the cans found in and around defendant's truck was DFE. Detective O'Donnell also discovered plastic shopping bags and tissues inside defendant's truck. In Detective O'Donnell's training and experience, these items were items used to facilitate the inhalation of Surf Onn. There was also evidence, discussed at greater length *infra*, that defendant had inhaled Surf Onn multiple times in the past and was well aware of its intoxicating effects. The number of DFE cans located in and around defendant's truck after the collision coupled with the bags and tissues, items used to facilitate inhalation, and with defendant's prior experience with inhaling Surf Onn, demonstrated that defendant had knowledge of his intoxication and awareness of the effects of the inhalant on him.

There was also evidence that defendant's driving was erratic immediately after he pulled out of the Walmart parking lot at 8:54 p.m. Two witnesses saw defendant swerve in and out of his lane and toward oncoming traffic at 9:00 p.m. Defendant also intermittently sped up and slowed down, eventually stopping in the middle of the road. The witnesses drove behind defendant and called 911 to report his erratic driving. An hour later, another driver called 911 to report that

-4-

defendant had turned from the median into oncoming traffic in the eastbound lanes of I-69. When this driver changed lanes to avoid defendant, defendant also changed lanes. The driver attempted to get defendant's attention by honking his horn and flashing his lights. This attempt was unsuccessful. After this driver passed defendant, he also called 911.

Considering this evidence in a light most favorable to the prosecution, a rational trier of fact could have found that defendant "intentionally set in motion a force likely to cause death or great bodily harm," *Djordjevic*, 230 Mich App at 462, when he inhaled Surf Onn and proceeded to drive erratically while intoxicated. Viewed in the light most favorable to the prosecution, we conclude that there was sufficient evidence to establish the malice element required for a second-degree murder conviction.

Next, defendant argues that the trial court erred by failing to instruct the jury that it could consider whether defendant realized that by making a U-turn[6] and driving the wrong way on the highway, he would cause great bodily harm or death or whether, conversely, it was an accident. We disagree.

We review claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). However, a trial court's determination whether a jury instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010) (citation omitted). An abuse of discretion occurs when the lower court decision falls outside the range of principled outcomes. *Bailey*, 330 Mich App at 50.

Defendant argues that the trial court erred by determining that there was no evidence of accident and declining to read M Crim JI 7.2, which provides:

> (1) The defendant says that [he / she] is not guilty of _____ because _____'s death was accidental. By this defendant means that [he / she] did not mean to kill or did not realize that what [he / she] did would probably cause a death or cause great bodily harm.
>
> (2) If the defendant did not mean to kill, or did not realize that what [he / she] did would probably cause a death or cause great bodily harm, then [he / she] is not guilty of murder.

Jury instructions "must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005) (citation omitted). Again, second-degree murder does not require a finding of a specific intent to harm or kill; rather, "[t]he intent to do an act in obvious disregard of life-endangering consequences is a malicious intent." *Goecke*, 457 Mich at 466. A jury may infer malice from evidence that the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *Djordjevic*, 230 Mich App at 462. And, malice for second-degree murder may be established "even absent an actual intent to cause a particular result if there is

---

[6] In his brief on appeal, defendant characterizes his driving act as a U-turn.

-5-

wanton and willful disregard of the likelihood that the natural tendency of a defendant's behavior is to cause death or great bodily harm." *Goecke*, 457 Mich at 466.

Defendant contends that the trial court erroneously concluded there was no evidence of accident. This Court has defined accident as

> a fortuitous circumstance, event or happening; an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence; an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; chance or contingency; fortune; mishap; some sudden and unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops; something happening by chance; something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of the range of ordinary calculations; that which exists or occurs abnormally, or an uncommon occurrence. [*People v Hess*, 214 Mich App 33, 37; 543 NW2d 332 (1995) (quotation marks and citation omitted).]

Defendant contends that his entry onto the highway, U-turn, traveling westbound in the eastbound lanes, and collision with the Challenger was an accident. Defendant ignores the fact that the collision followed his decision to consume substances, including significant amounts of DFE, and then drive while under the influence. There was no evidence that defendant's decision to drive while intoxicated was an event that happened without any human agency. *Id.* at 37. Nor was it "an event which under the circumstances [was] unusual and unexpected by the person to whom it happen[ed]." *Id.* (quotation marks and citation omitted). There was also evidence, as noted previously, that defendant was aware of the effect the inhalant had on him. Moreover, defendant did not realize that he drove the wrong way on the highway. When Detective O'Donnell asked defendant if he remembered turning around while driving on the highway, defendant said, "[I]t was weird, it didn't seem like the freeway or something." Defendant further said that he was "driving down the road" when he noticed that a vehicle was coming toward him and hit him. This was not evidence of an accident, but evidence that defendant was so intoxicated that he did not know that he was driving against traffic.[7]

There was ample evidence that defendant was intoxicated. His blood samples were positive for DFE, cocaine, and THC. The evidence also established that defendant drove out of the Walmart parking lot of his own accord, after he bought a four-pack of Surf Onn and sat in the

---

[7] Voluntary intoxication, as opposed to involuntary intoxication, is not a defense to a criminal act. See MCL 768.37(1) ("[I]t is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor, drug, including a controlled substance, other substance or compound, or combination of alcoholic liquor, drug, or other substance or compound.").

parking lot for almost two hours. Thereafter, witnesses saw defendant driving his truck erratically, followed him, and called 911. Defendant programmed the maps application on his phone to find his way home because he had driven past his exit before the collision occurred. Another driver testified that he saw defendant's truck driving toward him in the eastbound lanes. This driver changed lanes to avoid a collision, but defendant also changed lanes. The other driver then flashed his lights and honked his horn at defendant, but defendant did not slow down and seemingly increased his speed.

The evidence establishing defendant's erratic and reckless driving did not support a finding that the collision was "something unforeseen, unexpected, unusual, extraordinary or phenomenal." *Id*. (quotation marks and citation omitted). Rather, the evidence established that defendant decided to drive while intoxicated. The trial court did not err when it denied defendant's request to instruct the jury regarding accident.[8]

In his Standard 4 brief, defendant also argues that the trial court should have specifically instructed the jury that he had to have one of the three states of mind for second-degree murder when he began driving the wrong way on the highway. We disagree.

Because defendant did not request an alteration of the instructions regarding the malice element for second-degree murder, this issue is unpreserved. *People v Everett*, 318 Mich App 511, 526; 899 NW2d 94 (2017). This Court reviews unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To obtain relief, defendant must prove that (1) an error occurred, (2) the error was plain, (3) and the plain error affected his substantial rights. *Id*. The error must also have resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*.at 763-764.

The trial court instructed the jury as follows:

> In Count one the Defendant is charged with the crime of second degree murder. To prove this charge the Prosecutor must prove each of the following elements beyond a reasonable doubt:

---

[8] In any event, the failure to instruct on accident requires reversal only when the defendant establishes that the error resulted in a miscarriage of justice under a more probable than not standard. *People v Hawthorne*, 474 Mich 174, 180-181; 713 NW2d 724 (2006). Here, as in *Hawthorne*, "the jury instructions explaining the intent element of murder made it clear that a finding of accident would be inconsistent with a finding that defendant possessed the intent required for murder." *Id*. at 184-185 (quotation marks and alteration marks omitted). In light of this, coupled with the evidence of defendant's purchase of DFE, his use in the Walmart parking lot, and his decision to drive home under the influence, the failure to instruct on accident did not constitute error affecting the outcome of the proceedings. It is not reasonably probable that a different outcome would have resulted, and therefore, reversal is not required. *Id*.

First, that the Defendant caused the death of Graham Wiltse. That is, Graham Wiltse died as a result of Defendant crashing his vehicle into Mr. Wiltse's vehicle.

Second, that the Defendant had one of these three states of mind: He intended to kill, or he intended to do great bodily harm to Graham Wiltse, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

Third, that the killing was not justified, excused, or done under circumstances that would reduce it to a lesser crime.

While defendant attempts to separate his actions while driving intoxicated, defendant "intentionally set in motion a force likely to cause death or great bodily harm," *Djordjevic*, 230 Mich App at 462, when he left the Walmart parking lot intoxicated and continued to drive. Defendant's erratic driving began immediately after he pulled out of the Walmart parking lot. Witnesses following defendant's truck described defendant's driving as erratic. Defendant's erratic driving continued when, an hour later, another driver witnessed defendant driving the wrong way and attempted to gain defendant's attention.

Defendant's actions that resulted in the collision that caused Wiltse's death began when defendant chose to drive, and not when he began traveling the wrong way on the highway.[9] Therefore, the trial court properly instructed the jury as to the elements of second-degree murder and the malice required.

## III. TAMPERING WITH THE EVIDENCE

Defendant also alleges that there was insufficient evidence admitted at trial to support his conviction of tampering with evidence. We disagree.

MCL 750.483a(5)(a) provides that "[a] person shall not . . . [k]nowingly and intentionally remove, alter, conceal, destroy, or other otherwise tamper with evidence to be offered in a present or future official proceeding." The statute defines an official proceeding as "a proceeding heard

---

[9] Defendant's reliance on *Hardaway v Withrow*, 305 F3d 558 (CA 6, 2002) is misplaced. In *Hardaway*, the petitioner shot and killed the victim during an aborted drug transaction. The petitioner raised the issue of self-defense. Although he was charged with first-degree murder, the jury was also instructed on second-degree murder and voluntary manslaughter. *Id*. at 560. The claimed error in *Hardaway* was the failure to instruct on the killing occurring without justification or excuse, not the requisite malice and the timing of the intent. *Id*. at 565. Moreover, to warrant habeas relief, the petitioner was required to demonstrate that the jury instructions, when taken as a whole, were so infirm as to render the entire trial fundamentally unfair. *Id*. Because this burden was not met, the petitioner was not entitled to habeas relief. *Id*. The *Hardaway* decision does not support defendant's claim for appellate relief.

before . . . a . . . judicial . . . agency or official authorized to hear evidence under oath . . . ." MCL 750.483a(11)(a).

The factual basis for defendant's conviction was his alleged concealment of four cans of Surf Onn. The prosecution alleged that defendant tried to conceal the cans by throwing them out of his truck's window after the accident before the police arrived at the scene. Sergeant Bueche testified that he found the collection of cans outside of the vehicle odd considering that the cans were all lined up in one location. He further indicated that defendant's truck had side curtain air bags, which reduced the amount of debris ejected from vehicles during accidents, including rollover accidents. Sergeant Bueche also explained that if an item had been ejected from defendant's truck, the items would have been thrown in the direction that the vehicle was traveling when it rolled. He testified that after defendant's truck hit Wiltse's Challenger, the truck rolled onto the passenger side, to the roof, to the driver's side, and back onto all four wheels. The majority of debris would have been thrown out over the span that the vehicle traveled while it was rolling. The driver's side of the vehicle was the last side that had contact with the ground before the truck righted itself. Therefore, the debris last thrown out of the inside of the truck would have been thrown out the driver's side. In light of his reconstruction of the collision and its aftermath, Sergeant Bueche did not believe that the cans he found on the ground had been ejected from the vehicle and landed right next to each other on the passenger's side of the vehicle. In addition, the only other debris on the ground on the passenger side of the truck consisted of the grocery bags and tissues. Testimony was introduced that the grocery bags and tissues facilitated the inhalation of the Surf Onn. Sergeant Bueche concluded that the cans had been thrown to their location on the ground. Deputies Wilczak and King testified that when they approached the vehicle, defendant was on the passenger side.

Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found that defendant knew that these items could establish that he was driving while intoxicated and that he threw them out of the passenger compartment of his vehicle to conceal them from discovery by the first responders.

IV. EVIDENTIARY ISSUES

Defendant claims that the trial court erred by allowing the prosecution to admit other-acts evidence and allowing an expert witness to testify outside of his training and experience. We disagree.

This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Olney*, 327 Mich App 319, 325; 933 NW2d 744 (2019) (quotation marks and citation omitted), remanded on other grounds 505 Mich 1029 (2020). A trial court also abuses its discretion when it admits evidence that is inadmissible as a matter of law. *Denson*, 500 Mich at 396 (citation omitted). This Court reviews a question of law, such as whether a rule of evidence precludes admission, de novo. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010).

The admissibility of other-acts evidence is governed by MRE 404.[10] *Denson*, 500 Mich at 397. Generally, MRE 404(b) prohibits the admission of other crimes, wrongs, or acts "to prove a propensity to commit such acts." *Id*. But MRE 404(b)(1) allows for the admissibility of such evidence for certain purposes:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In order to introduce evidence of other acts, a prosecutor must first establish that the offered evidence is logically relevant to a material fact in the case pursuant to MRE 401 and MRE 402. *Mardlin*, 487 Mich at 615. Thus, the prosecutor bears the burden to show that the offered evidence is relevant to a proper purpose listed in MRE 404(b)(1) and not simply evidence that would lead the jury to convict a defendant on the basis of his past conduct rather than on evidence of his conduct for the instant offense. *Id*. at 614-615; *People v Werner*, 254 Mich App 528, 539; 659 NW2d 688 (2002). The court rule only excludes evidence that is not relevant to anything other than the defendant's character or propensity to commit bad acts. *Werner*, 254 Mich App at 539. If the evidence has relevance to an issue beyond defendant's character or propensity to commit bad acts, the evidence is admissible. *Id*. The trial court must then consider any prejudice that arises from evidence that also unavoidably reflects on the defendant's character. *Mardlin*, 487 Mich at 616. Under MRE 403, the trial court may exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice . . . ." *Id*. In addition, upon request, the trial court may instruct the jury to consider the evidence only for proper, noncharacter purposes. *Id*.

In this case, the prosecution argued that evidence of defendant's previous purchases of Surf Onn in the month leading up to the collision were relevant to defendant's knowledge[11] of the effects that inhaling Surf Onn had on him, which was necessary to prove the elements of second-degree murder. Defendant countered that the evidence only tended to show that he was an addict and did not establish the requisite state of mind to prove second-degree murder. The trial court found that the evidence was relevant to show that defendant understood how inhaling the Surf Onn affected him when he decided to drive. The trial court further found that, although the evidence

---

[10] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). For purposes of this opinion, we rely on the version of the rules in effect at the time of trial.

[11] Originally, the prosecutor offered a multitude of reasons for admission of the evidence but ultimately settled on knowledge. The trial court's instruction noted the limited application to knowledge.

was prejudicial, any prejudice did not substantially outweigh its probative value. The trial court also provided a limiting instruction.

The trial court did not abuse its discretion by admitting evidence of defendant's purchases of Surf Onn in the month leading up to the collision. The evidence was properly admitted under MRE 404(b) because it was relevant to a material fact in the case—defendant's knowledge and absence of mistake or accident—rather than defendant's character. *Werner*, 254 Mich App at 539. For the charge of second-degree murder, the prosecution had to prove that defendant had "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 457 Mich at 464. The evidence of defendant's regular purchase of the inhalant before the collision tended to show that defendant had knowledge of the intoxicating effects of the inhalant. With this knowledge, defendant made the decision to drive after his consumption of the Surf Onn.

There was evidence that defendant had gone to the hospital within two weeks of the accident because he thought that the Surf Onn was poisoning him. Defendant described another incident in which, after inhaling Surf Onn on a previous day, he was sitting on the toilet and fell on his face to the floor. Defendant also explained that he would never actually inhale the Surf Onn while he was driving because of the effect it had on him. Therefore, the evidence of defendant's earlier purchases was properly admitted because it was relevant to defendant's knowledge of and intent to drive in wanton and willful disregard of the likelihood that the natural tendency of driving while under the influence of the inhalants would cause death or great bodily harm.

Defendant argues that this evidence only served to prove that he was an addict, and, therefore, was substantially more prejudicial than probative. But, in order to prove second-degree murder, the prosecution had to prove that defendant had one of three states of mind. Defendant's continued use of Surf Onn was relevant to whether defendant had knowledge of the effects the inhalant had on him, and therefore, was relevant to proving the requisite state of mind. Defendant's awareness of the effects the inhalant had on him addressed the issue of whether defendant acted in wanton and willful disregard of the likelihood that his driving under the influence would cause death or great bodily harm. MRE 404(b) seeks to avoid unfair prejudice, "not prejudice that stems only from the abhorrent nature of the crime itself." *People v Starr*, 457 Mich 490, 500; 577 NW2d 673 (1998).

Finally, the trial court instructed the jury:

> You have heard evidence that was introduced to show that the Defendant committed improper acts for which he is not on trial. If you believe this evidence you must be very careful only to consider it for certain purposes.
>
> You may only think about whether this evidence tends to show that the Defendant knew what the things found in his possession were, and that the Defendant knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the Defendant is a bad person or that he is likely to commit crimes. You must not convict the Defendant here because you think he is guilty of other bad conduct.

The probative value of defendant's prior purchases of Surf Onn, along with the trial court's limiting instruction, "did not stir the jurors to such passion . . . as to [be swept] beyond rational consideration of [the defendant's] guilt or innocence of the crime on trial." *Id*. at 503 (quotation marks and citation omitted; alterations in original). Accordingly, the trial court did not abuse its discretion by allowing the admission of testimony and evidence about defendant's prior purchases of the inhalant.

Defendant also argues that the trial court abused its discretion by allowing Logan Albertson, a forensic scientist in the toxicology unit of the Michigan State Police, to testify regarding the effects of cocaine on an individual. We disagree.

"This Court reviews for an abuse of discretion a trial court's decision to admit or exclude expert witness testimony. This Court also reviews for an abuse of discretion a trial court's decision on an expert's qualifications." *People v Dixon-Bey*, 321 Mich App 490, 496; 909 NW2d 458 (2017). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Olney*, 327 Mich App at 325.

MRE 702 governs the admissibility of expert testimony and provides, in pertinent part:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 limits expert testimony "to opinions falling within the scope of the witness's knowledge, skill, experience, training, or education." *People v Unger*, 278 Mich App 210, 251; 749 NW2d 272 (2008). "Consequently, an expert may not opine on matters outside his or her area of expertise." *Id*.

Albertson testified that he was a forensic scientist in the toxicology unit of the Michigan State Police Crime Laboratory. Albertson joined the department in 2010 and became a forensic scientist in 2011. Albertson had a bachelor of science degree in chemistry. Albertson had been qualified as an expert in the field of forensic science for the analysis of bodily fluids for the presence or absence of controlled substances and alcohol and had testified about 7,200 times. Although he was not qualified as an expert every time he testified, he was qualified as an expert every time he was presented as an expert witness.

Defendant did not object to Albertson being qualified as an expert as to the analysis of the presence of certain controlled substances or alcohol within any biological specimen, but objected

to the prosecution asking for an opinion for anything beyond this area of expertise. The prosecution proceeded to question Albertson about his background with regard to the general effects of cocaine on a person. Alberton indicated that he had specific training in that area. Albertson had attended two Borkenstein seminars; one discussed the effects of various categories of drugs on individuals' behaviors and one concentrated on the effects of alcohol. Albertson also engaged in continuing education on the subject. Albertson denied participating in any research regarding the effects of cocaine on an individual, publishing any articles regarding the effects of cocaine on an individual, or sitting as a peer reviewer of another's research or authorship. The trial court found Alberton's background and qualifications were sufficient for limited testimony regarding the general intoxicating effects of cocaine on an individual, not a specific individual and not defendant. The trial court found the testimony marginally relevant.

Albertson testified as follows:

> In general, as I said before, cocaine is a central nervous system simulate [sic]. You could also think of another compound that people have more experience with, for example, caffeine. That's also a stimulant. Um, but the potent, potency of cocaine is, is higher, so maybe the same affects [sic] of caffeine that are felt, um, would be felt with cocaine, um, but to a higher degree because of the potency.

On cross-examination, Albertson denied any knowledge of the effect the cocaine had on defendant or the relationship between a particular concentration of cocaine and its effects on an individual.

The trial court did not abuse its discretion by allowing Albertson to testify regarding the general effects of cocaine on an individual. Albertson's testimony was very narrow, limited to the general effects of a central nervous system stimulant. Moreover, defense counsel's cross-examination elicited Albertson's admission that he did not know the effects of the cocaine on defendant or knowledge of the effect of the amount of cocaine for which defendant tested positive. "Gaps or weaknesses in the witness' [sic] expertise are a fit subject for cross-examination, and go to the weight of his testimony, not its admissibility." *People v Gambrell*, 429 Mich 401, 408; 415 NW2d 202 (1987) (quotation marks and citations omitted). Accordingly, the trial court did not abuse its discretion in admitting Albertson's testimony and reversal is not required.

## V. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel was ineffective. In particular, defendant asserts that the GPS evidence offered at trial directly contradicted the eyewitness testimony and the prosecution's argument that defendant made a U-turn before proceeding the wrong way on I-69. Defendant maintains that he never made a U-turn, but mistakenly merged into oncoming traffic. Consequently, counsel was ineffective for arguing or conceding that defendant made a U-turn on the highway. We disagree.

A claim of ineffective assistance of counsel involves mixed questions of law and fact. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008) (citation omitted). This Court reviews a trial court's findings of fact for clear error. *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). Whether those facts constitute a violation of the defendant's right to the effective assistance of counsel is a question of law that this Court reviews de novo. *Id*. Because

defendant did not preserve this issue by raising it in a motion for new trial or a request for a *Ginther*[12] hearing, it is unpreserved. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015). Our review is, therefore, limited to errors apparent on the record. *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "To establish ineffective assistance of counsel, defendant must show (1) that trial counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). In examining whether trial counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Defendant contends that his trial counsel was ineffective for arguing that defendant made a U-turn on the highway when he informed counsel that he never made a U-turn, but rather, mistakenly merged into oncoming traffic.

Although the term U-turn was used several times in the lower court and in the appellate briefs, defendant did not technically make a U-turn. As he was driving west on the westbound lanes, he made his way to the median and "turned" west onto the eastbound side of the highway. Defendant did not perform a 180-degree rotation to reverse his direction of travel. The evidence at trial made this clear, demonstrating that defendant crossed over the median from the westbound lanes to the eastbound lanes and continued driving west. Defendant retained an expert witness, James Dinsmore, who testified that he reviewed the Google maps timeline on defendant's cellphone after logging into the Google cloud information on defendant's phone. At 9:41:26 p.m., the Google maps timeline showed defendant's device moving onto the highway on the interchange and heading west. The Google maps timeline showed defendant's device on the westbound side of the highway traveling west. The timeline depicted a series of pings in the median between the westbound and eastbound lanes, indicating that the device crossed over from the westbound lanes to the eastbound lanes. Dinsmore's testimony aligned with Detective Kelsey Wade's testimony regarding the path the device traveled. Detective Wade did not have the direction of travel of the device, but she knew the distance and area traveled, which aligned with Dinsmore's testimony.

Under these circumstances, we see no basis to conclude that defense counsel performed deficiently with respect to the use of the term U-turn at trial. Defense counsel retained an expert witness to thoroughly describe defendant's continuous westbound course of travel. Defense counsel expounded on Dinsmore's testimony in his closing argument providing a possible explanation for defendant's presence in the eastbound lanes. Defense counsel explained that defendant may have fallen asleep, was confused and disoriented when he woke up in the median, and simply continued to drive in a westerly direction.

---

[12] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

Defendant also does not explain how a different handling of this issue would have had a reasonable probability of changing the outcome in this case. Defendant was driving under the influence of cocaine, DFE, and THC as evidenced by his positive blood tests. There was no dispute that defendant drove on the wrong side of the highway causing a collision which resulted in Wiltse's death, and there is nothing to indicate that defendant's conviction somehow depended on whether he came to be driving on the wrong side of the highway via a U-turn or a merge. Moreover, the trial court instructed the jury that "[t]he lawyers' statements and arguments are not evidence."

Defendant has not established that his trial counsel's performance fell below an objective standard of reasonableness or that pursuing a different strategy had a reasonable probability of changing the outcome. Therefore, defendant failed to establish that he was denied the effective assistance of counsel.

## VI. SENTENCING

Defendant argues that the trial court erred when it assessed 20 points for PRV 7 because the evidence did not support defendant's conviction of tampering with the evidence and, therefore, this Court should remand for resentencing. In light of our determination that there was sufficient evidence to support this conviction, the claim of error is without merit.

Affirmed.

/s/ Anica Letica
/s/ Mark T. Boonstra
/s/ Philip P. Mariani

-15-